**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 6, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

　　Plaintiff - Appellee,

v.

SHAMON DOMINIC PACHECO,

　　Defendant - Appellant.

No. 17-2115
(D.C. Nos. 1:16-CV-00341-WJ-CG and
1:03-CR-2367-WJ-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **BALDOCK**, and **BACHARACH**, Circuit Judges.
_____

Shamon Dominic Pacheco appeals from a district court order that denied his

28 U.S.C. § 2255 motion to vacate his armed-career criminal sentence. Exercising

jurisdiction under under 18 U.S.C. § 3742 and 28 U.S.C. § 1291, we affirm.

**BACKGROUND**

In 2005, Pacheco pled guilty to being a felon in possession of a firearm or

ammunition, in violation of 18 U.S.C. § 922(g)(1). The presentence report (PSR)

indicated that Pacheco qualified for the mandatory minimum fifteen-year sentence under

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the Armed Career Criminal Act (ACCA), as he had three or more prior violent felony convictions, 18 U.S.C. § 924(e). Specifically, the PSR identified multiple predicate New Mexico convictions for crimes committed on three different occasions: (1) aggravated assault with a deadly weapon, *see* N.M. Stat. Ann. § 30-3-2(A), and shooting at or from a motor vehicle, *see id.* § 30-3-8(B); (2) another aggravated assault and another vehicular shooting; and (3) aggravated battery against a household member, *see id.* § 30-3-16. At sentencing, the district court adopted the PSR's finding that Pacheco qualified as an armed-career criminal and sentenced him to fifteen years' imprisonment. But neither the PSR nor the district court addressed what clause of the ACCA governed Pacheco's sentence. *See* 18 U.S.C. § 924(e)(2)(B) (defining "violent felony" as an offense that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the elements clause); (2) "is burglary, arson, or extortion, [or] involves use of explosives" (the enumerated-offenses clause); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the residual clause)).

In 2016, Pacheco sought § 2255 relief from his sentence based on the Supreme Court's determination that the ACCA's residual clause violates due process. *See Samuel Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015); *see also Welch v. United States*, 136 S. Ct. 1257, 1265 (2016) (holding that *Samuel Johnson* applies retroactively to cases on collateral review). The district court denied relief, concluding that Pacheco's two convictions for aggravated assault and one conviction for aggravated battery fell under the ACCA's elements clause, rather than the invalidated residual clause. This court

2

granted Pacheco a certificate of appealability on the *Samuel Johnson* issue, to which we now turn.

## DISCUSSION

### I. Standards of Review

"Whether a prior conviction satisfies the ACCA's violent felony definition is a legal question we review de novo." *United States v. Titties*, 852 F.3d 1257, 1263 (10th Cir. 2017). In conducting our review, "we apply the categorical approach, focusing on the elements of the crime of conviction, not the underlying facts." *United States v. Harris*, 844 F.3d 1260, 1263 (10th Cir. 2017). But if a statute is divisible, such that it "sets out one or more elements of the offense in the alternative," then the modified categorical approach applies. *Descamps v. United States*, 570 U.S. 254, 257 (2013). The modified categorical approach permits us to "look[ ] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016).

### II. Aggravated Assault

We begin with Pacheco's two convictions for aggravated assault. In New Mexico,

[a]ggravated assault consists of either:

A. unlawfully assaulting or striking at another with a deadly weapon;

B. committing assault by threatening or menacing another while wearing a mask, hood, robe or other covering upon the face, head or body, or while disguised in any manner, so as to conceal identity; or

C. willfully and intentionally assaulting another with intent to commit any felony.

3

Whoever commits aggravated assault is guilty of a fourth degree felony.

N.M. Stat. Ann. § 30-3-2. This "statute is a divisible statute because it sets out alternative elements for aggravated assault in three subsections." *United States v. Maldonado-Palma*, 839 F.3d 1244, 1247 (10th Cir. 2016). Because Pacheco acknowledges he was convicted of the deadly-weapon version of aggravated assault, *see* N.M. Stat. Ann. § 30-3-2(A), the modified categorical approach is satisfied, and we must "apply the categorical approach and examine only the elements of [§ 30-3-2(A)], without regard to [Pacheco's] specific conduct," *Maldonado-Palma*, 839 F.3d at 1247, 1248.

As set forth above, subsection (A) provides that "[a]ggravated assault consists of . . . unlawfully assaulting or striking at another with a deadly weapon[.]" N.M. Stat. Ann. § 30-3-2(A).[1] For this statute to satisfy the ACCA's elements clause, it must require "*violent* force—that is, force capable of causing physical pain or injury to another person." *Curtis Johnson v. United States*, 559 U.S. 133, 140 (2010).

In *Maldonado-Palma*, this court held that subsection (A) meets the *Curtis Johnson* standard of violent force. 839 F.3d at 1250. Critical to the court's reasoning was that aggravated assault with a deadly weapon requires "actual use" of a weapon "capable of producing death or great bodily harm or inflicting dangerous wounds in an assault." *Id.* (internal quotation marks omitted). Although *Maldonado-Palma* applied the elements clause of § 2L1.2 of the U.S. Sentencing Guidelines, it is instructive "in determining

---

[1] Although subsection (A) proscribes either "unlawfully assaulting or striking at another," these are alternative means of committing assault, rather than elements of the crime, and thus, they do not trigger modified-categorical analysis. *See Maldonado-Palma*, 839 F.3d at 1248 n.4.

4

whether a conviction qualifies as a violent felony" under the ACCA. *United States v. Ramon Silva*, 608 F.3d 663, 671 (10th Cir. 2010) (internal quotation marks omitted).[2]

Nevertheless, Pacheco suggests that we declare *Maldonado-Palma* wrongly decided so that we might follow the Sixth Circuit's contrary decision in *United States v. Rede-Mendez*, 680 F.3d 552, 558 (6th Cir. 2012) (holding that § 30-3-2(A) does not categorically satisfy the elements clause of Guideline § 2L1.2). But we are not at liberty as a panel to overrule this circuit's precedent. *See United States v. Springer*, 875 F.3d 968, 974-75 (10th Cir. 2017).[3]

In short, *Maldonado-Palma* directs that § 30-3-2(A) convictions have as an element violent force. We therefore conclude that Pacheco's two aggravated-assault convictions satisfy the ACCA's elements clause, and therefore, the Supreme Court's invalidation of the ACCA's residual clause had no bearing on his sentence.

---

[2] Like the ACCA's elements clause, the § 2L1.2 elements clause asks whether the crime of conviction "has as an element the use, attempted use, or threatened use of physical force against the person of another," U.S. Sentencing Guidelines Manual § 2L1.2 cmt. n.2 (U.S. Sentencing Comm'n 2015); *see also* 18 U.S.C. § 924(e)(2)(B)(i) (defining "violent felony" under the ACCA as any crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another").

[3] To the extent Pacheco attempts to manufacture an intra-circuit split by arguing that *Maldonado-Palma* conflicts with *United States v. King*, 979 F.2d 801 (10th Cir. 1992), we are unpersuaded. In *King*, this court held that New Mexico conspiracy convictions do not include a threatened use of physical force for purposes of the ACCA's elements clause because a conspiracy "is complete upon the formation of the intent to commit a felony, and does not require that any action be taken on that intent." *Id.* at 803. *King*'s holding is plainly inapplicable to *Maldonado-Palma* or the case at bar, neither of which involves a conspiracy conviction.

### III. Aggravated Battery Against a Household Member

Having found two qualifying ACCA convictions, we now turn to Pacheco's conviction for aggravated battery against a household member.[4] The applicable statute consists of a definitional subsection followed by alternative subsections establishing the crime as either a misdemeanor or felony based on the resulting harm:

> A. Aggravated battery against a household member consists of the unlawful touching or application of force to the person of a household member with intent to injure that person or another.

> B. Whoever commits aggravated battery against a household member by inflicting an injury to that person that is not likely to cause death or great bodily harm, but that does cause painful temporary disfigurement or temporary loss or impairment of the functions of any member or organ of the body, is guilty of a misdemeanor.

> C. Whoever commits aggravated battery against a household member by inflicting great bodily harm or doing so with a deadly weapon or doing so in any manner whereby great bodily harm or death can be inflicted is guilty of a third degree felony.

N.M. Stat. Ann. § 30-3-16.

This statute is divisible "on its face," as it "carr[ies] different punishments." *Mathis*, 136 S. Ct. at 2256. Thus, we must "review the record materials to discover which . . . alternative[ ] played a part in [Pacheco's] prior conviction." *Id.*

The only document used to identify Pacheco's prior convictions was the PSR. The PSR states that Pacheco committed "Aggravated Battery Against a Household Member (Deadly Weapon)," for which he was sentenced to "3 years imprisonment, plus [a] 1 year firearm enhancement." R., Vol. III at 13. In an accompanying section, the PSR recites

---

[4] Because we ultimately conclude that Pacheco's aggravated-battery conviction satisfies the ACCA's elements clause, we need not decide whether his convictions for shooting at or from a motor vehicle likewise qualify him for an ACCA sentence.

the facts of the crime "[a]ccording to Court documents." *Id.* at 14. At sentencing,

Pacheco's counsel did not object to the PSR, and counsel acknowledged that Pacheco

"was sentenced to a series of [state] felonies." R., Vol. IV at 4. Although a PSR is

generally not an approved source for ascertaining the facts underlying a conviction, *see*

*United States v. Rooks*, 556 F.3d 1145, 1148 n.4 (10th Cir. 2009), we may look to the

PSR to ascertain what statute formed the basis of the defendant's conviction, *see United*

*States v. Sykes*, 598 F.3d 334, 339 (7th Cir. 2010); *see, e.g.*, *United States v. West*,

550 F.3d 952, 956-57 (10th Cir. 2008) (stating that a PSR can establish "the factual

existence of [ACCA] predicate convictions" where defense counsel "fail[s] to object to

the information regarding th[o]se convictions already contained in the PSR" (emphasis

omitted)), *partially overruled on other grounds by Chambers v. United States*, 555 U.S.

122 (2009). Consequently, we focus our attention on subsections (A) and (C), for the

felony version of aggravated battery against a household member.

Although subsection (A) alternatively proscribes "the unlawful touching or

application of force to the person of a household member," those proscriptions are merely

"alternative methods of committing one offense" and do not implicate modified

categorical analysis. *Mathis*, 136 S. Ct. at 2256 (brackets and internal quotation marks

omitted). Subsection (C), on the other hand, "define[s] multiple crimes," *id.* at 2249.

Indeed, New Mexico's uniform jury instructions for aggravated battery against a

household member indicate that there are two alternate elements in subsection (C),

depending on whether the defendant "used a . . . deadly weapon," NMRA, Crim. UJI 14-

392, or either "caused great bodily harm" or "acted in a way that would likely result in

7

death or great bodily harm," *id.* 14-393. *See Mathis*, 136 S. Ct. at 2248 (explaining that elements "are what the jury must find beyond a reasonable doubt to convict the defendant" or "what the defendant necessarily admits when he pleads guilty").

Given that subsection (C) is thus divisible, we ordinarily would apply the modified categorical approach and look to the facts of Pacheco's offense to determine which element he was convicted under and whether the resulting crime satisfies the ACCA's elements clause. But as mentioned above, the only source for those facts is Pacheco's PSR. And despite the PSR's characterization of the offense as "Aggravated Battery Against a Household Member (Deadly Weapon)," R., Vol. III at 13, we cannot tell what court documents the probation officer used to determine that Pacheco's conviction was for the deadly-weapon version of aggravated battery, rather than the great-bodily-harm/death version. "We must therefore turn to the plain language of the . . . statute itself to determine if, standing alone, it would support the [ACCA] enhancement." *United States v. Perez-Vargas*, 414 F.3d 1282, 1285 (10th Cir. 2005) (declining to conduct a modified categorical analysis where "the PSR [wa]s the only source of information about the crime" and the probation officer had derived that information from unspecified "court documents" (internal quotation marks omitted)), *abrogated on other grounds by United States v. Ontiveros*, 875 F.3d 533, 536 (10th Cir. 2017); *accord United States v. Hockenberry*, 730 F.3d 645, 666-67 (6th Cir. 2013) (noting the distinction between "rely[ing] on unchallenged PSR findings to establish the *existence* of prior convictions"

8

and using PSR findings "to establish the specific *nature* of a conviction" (second emphasis added)).[5]

We begin with "the least of the acts criminalized by" subsection (C). *United States v. Hammons*, 862 F.3d 1052, 1054 (10th Cir. 2017). Pacheco argues that committing aggravated battery against a household member "in any manner whereby great bodily harm or death can be inflicted," N.M. Stat. Ann. § 30-3-16(C), does not require violent force because it can be "satisfied with proof of mere touching, however slight," Aplt. Opening Br. at 4. We disagree with Pacheco's characterization of the statute. Aggravated battery against a household member requires that the touching be done with an "intent to injure," N.M. Stat. Ann. § 30-3-16(A), and in "any manner whereby great bodily harm or death can be inflicted," *id.* § 30-3-16(C). It is beyond cavil that a person cannot touch someone with an intent to injure and in a manner that can inflict great bodily harm or death without applying "force capable of causing physical pain or injury," *Curtis Johnson,* 559 U.S. at 140.

---

[5] This court recently determined that a defendant's prior conviction satisfied the ACCA's enumerated-offenses clause by relying on the probation officer's consideration of "the underlying charging documents and/or jury instructions . . . without any objection from [the defendant]." *See United States v. Snyder*, 871 F.3d 1122, 1130 (10th Cir. 2017), *petition for cert. filed*, (U.S. Dec. 19, 2017) (No. 17-7157). In contrast, as we have explained, Pacheco's PSR was based on a review of unspecified court documents. Thus, *Snyder* does not mandate our acceptance of the PSR's statement that Pacheco was convicted of deadly-weapon aggravated battery. Moreover, we are required to resolve any conflict between *Snyder*'s reliance on a PSR and *Perez-Vargas*'s rejection of the same in favor of *Perez-Vargas*. *See Haynes v. Williams*, 88 F.3d 898, 900 n.4 (10th Cir. 1996) ("[W]hen faced with an intra-circuit conflict, a panel should follow earlier, settled precedent over a subsequent deviation therefrom."). Finally, we note that the government urges an examination of each of "the alternatives under Subsection (C)" to determine whether Pacheco's aggravated-battery conviction satisfies the ACCA's elements clause. Aplee. Br. at 17.

Next, Pacheco asserts that the degree of force required by *Curtis Johnson* cannot be measured in terms of the resulting harm. He reasons that "[i]njury is not a necessary element" of the crime. Aplt. Opening Br. at 30. But the New Mexico uniform jury instruction on aggravated battery against a household member (without a deadly weapon) expressly designates as an "element" whether "[t]he defendant . . . acted in a way that would likely result in death or great bodily harm." NMRA, Crim. UJI 14-393. Further, *Curtis Johnson* defines the requisite quantum of force—"violent force"—in terms of the potential resulting harm—"physical pain or injury." 559 U.S. at 140 (emphasis omitted). And in *Ontiveros*, this court indicated that the minimum force required to satisfy *Curtis Johnson* should be based on "the effect of the force" and not "the mechanism by which the force is imparted." 875 F.3d at 536 (internal quotation marks omitted) (citing *United States v. Castleman*, 134 S. Ct. 1405 (2014)).

We therefore conclude that the least of the acts criminalized by N.M. Stat. Ann. § 30-3-16(C), "commit[ting] aggravated battery against a household member . . . in any manner whereby great bodily harm or death can be inflicted," satisfies the ACCA's elements clause.

As for § 30-3-16(C)'s more stringent alternatives, they also qualify. If a person "commits aggravated battery against a household member by inflicting great bodily harm," N.M. Stat. Ann. § 30-3-16(C), that actual and "intentional causation of serious bodily harm[ ] easily meet[s] the standard for 'violent force.'" *Ontiveros*, 875 F.3d at 538 (emphasis omitted); *accord United States v. Vail-Bailon*, 868 F.3d 1293, 1303 (11th Cir. 2017) ("conclud[ing] that intentional force—even of the touching variety—that

10

in fact causes great bodily harm . . . necessarily constitutes force that is capable of causing pain or injury" and thereby satisfies *Curtis Johnson*'s requirement of "violent force" (emphasis and internal quotation marks omitted)).

Finally, if a person "commits aggravated battery against a household member by . . . doing so with a deadly weapon," N.M. Stat. Ann. § 30-3-16(C), "the use of a dangerous weapon during an assault or battery always constitutes a sufficient threat of force to satisfy the elements clause," *United States v. Taylor*, 843 F.3d 1215, 1224 (10th Cir. 2016) (internal quotation marks omitted); *see also Maldonado-Palma*, 839 F.3d at 1250 (noting that under New Mexico law, a deadly weapon is any firearm or weapon capable of causing death, great bodily harm, or dangerous wounds, and that "[e]mploying [such] a weapon . . . necessarily threatens" violent force under *Curtis Johnson*); *State v. Neatherlin*, 154 P.3d 703, 708 (N.M. Ct. App. 2007) (observing that a conviction for aggravated battery with a deadly weapon requires a "showing that an object was *used* as a deadly weapon" (emphasis added)).

Given that the entirety of § 30-3-16(C) satisfies the ACCA's elements clause, we conclude that the Supreme Court's invalidation of the residual clause had no bearing on Pacheco's sentence. Thus, as Pacheco had three valid predicate convictions under the ACCA, the district court did not err in denying his motion for § 2255 relief.

11

**CONCLUSION**

The judgment of the district court is affirmed.

Entered for the Court


Bobby R. Baldock
Circuit Judge